B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>VANESSA UGOBONO DIAZ | DEFENDANTS<br>JUAN P FIERRES SANTIAGO<br>NOREEN WISCOVITCH RENTAS |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>EVA MARGARITA CORTES VAZQUEZ<br>PO BOX 1486 TRUJILLO ALTO PR 00977-1486<br>TEL 787-283-1839 | ATTORNEYS (If Known)<br>JAIME RODRIGUEZ PEREZ, ESQ<br>PO BOX 902275 SAN JUAN PR 00902-2275 |
| PARTY (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☒ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

COMPLAINT TO DETERMINE DISCHAGEABILITY UNDER 11 U.S.C. 523(a)(5); 11 U.S.C. 523(a)(5)
11 U.S.C. 728(a)(2) AND 11 U.S.C. 728(a)(4)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☒ 2 61-Dischargeability – §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☒ 3 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☒ 1 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $1,569,779 |

Other Relief Sought

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>JUAN P FIERRES SANTIAGO | BANKRUPTCY CASE NO. 10-10065 ESL | |
| DISTRICT IN WHICH CASE IS PENDING<br>PUERTO RICO | DIVISION OFFICE | NAME OF JUDGE<br>ENRIQUE S. LAMOUTTE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*Eva Margarita Qtls Vazquez* | | |
| DATE<br>MAY 25, 2011 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>EVA MARGARITA CORTES VAZQUEZ | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | **CASE NO.:10-10065 (ESL)** |
| **JUAN P. FIERRES SANTIAGO,** | |
| Debtor. | **CHAPTER 13** |
| **VANESSA UGOBONO DÍAZ,** by herself and in representation of her three minor children, | |
| Plaintiffs, | ADV. PRO. NO. |
| v. | **DISCHARGEABILTY** |
| **JUAN P. FIERRES SANTIAGO,** Debtor and **NOREEN WISCOVITCH RENTAS** as Trustee, | |
| Defendants. | |

## COMPLAINT

TO THE HONORABLE COURT:

Comes now creditor **VANESSA UGOBONO DIAZ** and through the undersigned counsels, respectfully states and prays as follows:

### I. INTRODUCTION

1. This complaint is filed to object: (a) pursuant to 11 U.S.C. §523(a)(5) and (15) to the discharge of Debtor as to the debts that he owes to Ms. Vanessa Ugobono Díaz and her children for child support, tuition, insurance and homestead awarded by orders of the PR First Instance Court; and (b) pursuant to 11 U.S.C. §§727(a)(2) and 727(a)(4) to the discharge of Debtor.

## II.  JURISDICTION AND VENUE

2. This Honorable Court has jurisdiction over the present controversy pursuant to 28 U.S.C. § 157(b)(2)(I) and 11 U.S.C. §§523 and 727. This is a core proceeding that shall be heard and determined by this Honorable Court. Venue lies in this District pursuant to 28 U.S.C. §1408.

## III. PARTIES

3. The plaintiffs are Ms. Vanessa Ugobono who is Debtor's ex wife, which appears per se and in representation of her three minor children. All plaintiffs are resident of Puerto Rico.

4. Defendant Juan P. Fierres Santiago is the Debtor of this case and is a resident of Puerto Rico.

5. Defendant Noreen Wiscovitch Rentas is included in this proceeding since she is the Trustee of this case, and a party in interest.

## IV.  FACTS

6. Debtor filed the instant bankruptcy case on October 27, 2010 under the provisions of Chapter 13 of the U.S. Bankruptcy Code, 11 U.S.C. §1301 et seq. On April 7, 2011, this Honorable Court entered the order converting this case to Chapter 7, at Debtor's request.

7. Debtor and Ms. Vanessa Ugobono were married on December 23, 2000 under the conjugal partnership regime. During their marriage they had three children that currently are 9, 7 and 3

years old.

8. In June 2009, Debtor abandoned Ms. Ugobono. On September 10, 2009, Ms. Ugobono filed a divorce complaint of the case of Vanessa Ugobono Díaz v. Juan P. Fierres Santiago, Civil number KDI2009-1565 (708), First Instance Court, Superior San Juan Part. On July 20, 2010 the Superior Court entered a judgment divorcing the parties.

9. On said judgment, the Court did not decide the two major issues raised by the parties: (1) whether to grant Ms. Ugobono and her children her current residence as homestead ("hogar seguro"); and (2) the final amount that the Debtor will pay as child support. Both issues were continued by the Superior Court for later hearings.

10. However, the Court made a preliminary determination of child support payments of $4,909.00 that increased to $5,030.00 on December 10, 2010.

11. On October 13, 2010, the Superior Court held an evidentiary hearing to determine if Ms. Ugobono's and her children's have the right to retain their residence and household goods as homestead. On same date the Superior Court entered a resolution granting Ms. Ugobono's homestead request.

12. Since Debtor did not obtain what he wanted, authorization to sell the house, he filed just **seven days** after said decision, his Chapter 13 bankruptcy petition that he later

3

converted to Chapter 7. Since Debtor could not sell the residential property where his three minor children reside, he filed the instant petition to try to revoke the homestead determination of the local court and liquidate the principal asset of the community property.

13. The Debtor also filed this case to avoid payment of his domestic support obligations. The determination of the amount that the Debtor will finally be paying for child support has not been made by the PR First Instance Court, Superior San Juan Part. Said Court held an evidentiary hearing, but continued it for June 2011. Ms. Ugobono is requesting $20,000.00 per month in child support payments.

14. However, as stated hereinbefore, the PR First Instance Court imposed Debtor a preliminary/temporary domestic support obligation of $4,909.00 per month, that later was increased to $5,030.00.

15. As of this date, Debtor has been able to avoid payment of his domestic support obligation for almost a year and has due and in arrears the amount of $43,316.00, which includes the:

a. Pre-petition payments for the months of June, 2010 of $3,960.00 and July to October 2010 of $4,909.00 each, for a total of $23,596.00.

b. The post-petition installments for the months of February and March 2011 for $5,030.00 each, April 2011 and May 2001 for

4

$4,830.00 (Debtor made each month a partial payment of $200.00), for a total of $19,720.00.

16. In the above calculation is not included Debtor's debt for the school tuition and medical insurance for his children. The PR Superior Court made a determination that as part of his domestic support obligation and/or in accordance to the laws of Puerto Rico, the Debtor shall pay private school tuition ("matrícula" and "mensualidades") to his minor children.

17. Debtor has failed to make a single payment for school tuition and owes as of today the amount of $33,270.54. Said amount continues to increase each month.

18. The PR Superior Court also made a determination that as part of his domestic support obligation and/or in accordance to the laws of Puerto Rico, the Debtor shall pay health insurance to his minor children.

19. Debtor has failed to pay the medical insurance for his children for the months of January 2011 to May 2011 for $723.60 each, for the total amount of $3,618.00. Said amount increases by $723.60 per month.

20. Debtor originally concealed and still is concealing his interest in several businesses and property.

21. In first place Debtor failed to disclose interest in JF Distributors Company.

22.   On November 2, 2005, Debtor incorporated a corporation named J.F. Distributors Company (herein after J.F.), registered at the Puerto Rico State Department's Registry of Corporations with the number 157527.

23.  At the certificate of incorporation of J.F., Debtor figures as incorporator. and director until the first meeting of the Board of Directors is held.

24.  On August 7, 2006 at the first meeting of the Board of Directors of J.F. Distributors, the Board approved the issuance of 10,000 common shares with a par value of $100.00 per share.   As per the minutes of said Board of Directors, the shares of the corporation will be divided as follows:   50% of the common shares to Mr. Juan J. Fierres González (President) and the other 50% to Debtor, Mr. Juan P. Fierres González (Vice-president).

25.  In all credit applications for loans and line of credit obtained by said corporation, Debtor is listed as 50% owner of said corporation. Plaintiff has in her possession the Commercial Loan Application of Doral Bank in which Debtor figures as co-owner of the corporation; the Financial Statement that Debtor provided to Reliable Financial Services, in which his participation in the J.F. Distributors Corp. is estimated on $1,500,000.00; the two commercial loans applications with Banco Santander, in which Debtor figures as co-owner of the corporation as well as in the financial analysis prepared by BBVA when Debtor requested and

obtained a personal loan.

26. At the meeting of creditor held when this case was a Chapter 13 case, this attorney asked Debtor is he has lied or included false information at credit applications to which he answer "no."

27. To open the bank accounts of J.F. at Banco Santander, Debtor appeared as owner of 50% of the shares of J.F. Distributors, Inc. Also Debtor was authorized to take loans in representation as per the Credit Application for Commercial Deposit Account at Banco Santander and the Corporate Resolution duly notarized.

28. Debtor also executed as owner of the corporation businesses with other entities. For example, the license agreement executed by India Garments, Inc. for the exclusive use of the trade name MARK (Mahi Mahi International) was signed by him is his capacity of co-owner of said corporation.

29. Furthermore, the income tax returns filed by the corporation with the Treasury Department on disclosed Debtor as a shareholder of the corporation.

30. At the audited financial statement of J.F. Distributors prepared by CPA Roberto Cruz de Jesús, the sales revenue for said corporation in 2008 was $3,815,452.00. Also at said audit report the company recognized the stockholder's equity in $301,751.00.

31. As per debtor's own testimony at a deposition taken on March 26, 2010, the income J.F. Distributors Corp. increased significantly due the services he performed for said corporation.

32. In this case, Debtor filed a Schedule B of Personal Property and his Statement of Financial Affairs, which was later amended, in which denies having interest in any corporation.

33. Question #13 of Schedule B requires Debtor to disclose in if he has any interest in "13. Stock and interests in incorporated and unincorporated businesses. Itemize." Debtor's original answer was: "None."

34. On February 10, 2010, Debtor filed an amended answer to Question #13 of Schedule B stating:

> "Possible interest in JF Distributor Company, Taste Clothing LLC and J & J Apparel Group Corp. **Debtor alleges that he does not have any interest in the referred corporations.** Regarding this situation on December 18th, 2009 Debtor's former wife Mrs. Vanessa Ugobono filed a civil action captioned as Vanessa Ugobono Díaz v. J.F. Distributors Corp., Taste Clothing, LLC, J & J Apparel Group, Juan Pablo Fierres Gonzalez and Juan José Fierres Gonzalez." "Value: 0.00" (Emphasis added.)

35. It is important to point out that said amendment was filed by the Debtor after he appeared at the hearing held at the Puerto Rico First Instance Court, San Juan Part, to determine the amount of his permanent child support obligation toward his three minor children, at which a forensic certified public accountant an testified as expert witness regarding Debtor's interest in several businesses.

8

36. Debtors original and amended Statement of Financial Affairs ("SOFA") requires in question 18A that the Debtor discloses the:

> "18. Nature, location and name of business
>
> "a. If the debtor is an individual, list the names addresses, taxpayer identification numbers, nature of business, and beginning and ending dates of all business **in which the debtor was an officer director, partner or managing executive** of a corporation, partner in a partnership, the sole proprietor, or self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent of more of the voting or equity securities within **six years** immediately preceding the commencement of this case."

37. Debtor's answer in his original and his amended Statement of Financial Affairs was the same: "None."

38. In addition, Debtor testified at the first meeting of creditors when this case was a Chapter 13 case, that he did not have any interest in any corporation.

39. Said information is totally false in view of the above.

40. Debtor is hindering his interest in said corporation and lied under oath at the Schedules, SOFA and at the meeting of creditors when he denied having interest in a corporation within the last six years.

41. Debtor also failed to disclose his interest in Taste, LLC.

42. On April 9, 2009 Debtor, Diara LLC. and Jorge Suárez, executed a Limited Liability Company Agreement of Taste, LLC. a Delaware Limited Liability Company for the purpose of conducting business. Said company was organized with perpetual existence.

43. Article III of the Limited Liability Company Agreement (LLCA) named Capital Accounts and Capital Contributions states:

> 3.1 **Capital Contributions and Capital Accounts.** "...As of the effective Date, each member has contributed, or has agreed to contribute, its respective Capital Contribution and has a Capital Account and Percentage Interest as set forth on Schedule I. The Capital Contributions of the Members are as follows:"
>
> (a) Juan Fierres has contributed to the Capital of the Company his undivided Fifty Percent (50%) interest in the business currently conducted as "Taste." including, but not limited to, all physical assets, intellectual property, designs, customer lists, supplier information and the name "Taste" which contribution is deemed **to have a fair market value of One Hundred Fifteen Thousand One Hundred Seventy-six Dollars ($115,176),** and for which Juan Fierres receive a Membership Interest representing a Thirty-three and one-third Percentage Interest 33 1/3%);..."

44. The Schedule I of said agreement to which Article III refers states that the capital account and percentages of the Debtor in said business amounts to $115,176.00.

45. Question #14 of Schedule B required Debtor to disclose any: "Interests in partnership or joint ventures. Itemize."

46. Debtor's answer in his original as well as in his amended Schedule B was: "None."

47. Taste is currently operating, selling merchandize and investing in advertising.

48. The debtor failed to disclose his interest in this limited liability corporation in his Schedules B, SOFA wand at the meeting of creditors.

49. Debtor failed to disclose interest in commercial real estate property, of movable property and payment of a debt.

50. The Audited Financial Statement of J.F. Distributors Corp. disclosed in its balance sheet of December 31, 2008 that said corporation had a commercial building valued in $253,379.00 (located at 1655 Fernández Juncos Avenue), office furniture and fixture valued in $42,765.00 and Auto, Truck and others valued in $19,000.00.

51. As per the documents included hereinbefore, Debtor was owner of 50% of the shares of said corporation and none of said property is disclosed in Debtor's Schedules.

52. The corporation had a credit line for $750,000 with Banco Santander Puerto Rico that was secured by the avoce-described commercial real estate property, at the time Debtor and his wife, Ms. Vanessa Ugobono separated on 2009.

53. After their separation, the credit line was paid and cancelled by the payment of $750,000.00 that, as per Debtor's testimony under oath at a deposition held on March 26, 2010 came from funds obtained UBS Financial Services. However, UBS financial denied the existence of any account on debtor's name or J.F.

54. Said funds came from funds that J.F. Distributors Corp. transferred from its accounts to bank accounts of Fierres, Inc., which is a corporation owned by Enrique Fierres, debtor's uncle.

55. Debtor alleged then that his only income came from his work at J.F. Distributors Corp. and there is no evidence, even a claim, showing that Debtor or J.F. Distributors Corp. have borrowed money from Fierres, Inc. It would be incredible that Fierres, Inc. simply make a gift on the amount of $750,000.00 to cancel the credit line. Furthermore, J.F. and the Debtor have not reported any donation from Fierres, Inc. to the Treasury Department.

56. Therefore, it is evident that there are assets have not been reported.

57. Furthermore, if the corporation paid the lien of the real estate property or became its owner due to the payment of the lien, Debtor as shareholder of said corporation owns half the property or has a credit for said payment.

58. Debtor fails to disclose said property also in Schedule A, the office equipment, autos and trucks in Schedule B and the payment in the Statement of Financial Affairs question 10.

59. Debtor failed to disclose Cash in Banks in Spain

60. Debtor is co owner of a bank account number 0070730385 at Banco Savadell located at Avd de Galicia, Bajo, 33880, Pola Allande, Asturias, Spain that had a balance of $600,000 as of

September 4, 2009, as per Certification provided by In Situ Grupo Consultor.

61. Said account is not disclosed in Debtor Schedule B question number 2. Note that the Debtor did not disclose in the Statement of Financial Affairs that he closed any account or that he has any account for the benefit of another person.

62. Debtor is also a co owner of account 20 100139503 at Banco BBVA located at Mendizabal Street 1, 33003 Oviedo, España that had a balance of $956.10 as of April 5, 2010. However, after Debtor separated from his wife Vanessa Ugobono two deposits were made to that account, one of $291,000.00 on September 3, 2009 and another on November 12, 2009 for $150,000.00.

63. Said account is not disclosed in Debtor Schedule B question number 2. Note that the Debtor did not disclose in the Statement of Financial Affairs that he closed any account or that he has any account for the benefit of another person.

64. Debtor failed to disclose his ownership of a motor vehicle Mercedes Benz. The Debtor is the owner and has in his possession a motor vehicle Mercedes Benz 2004 that was registered in his name and was paid in full.

65. Said motor vehicle was not disclosed in Debtor's Schedule B, question number 25 and apparently was transferred to Debtor's father within a week of the divorce decree.

66. Debtor fabricated a debt with his father.

67. Debtor listed as contingent, unliquidated and disputed a debt that he allegedly owes to his father for the amount of $352,493.50.

68. Said claim was the object of the case of Juan Fierres González v. Vanessa Ugobono Díaz, Juan Pablo Fierres y la Sociedad Legal de Gananciales, Civil no. KCD10-2057, Superior Court San Juan Part, filed by Debtor's father.

69. In said case, the father of the Debtor, at which house Debtor currently lives, is claiming that the Debtor and his ex-daughter in law, Ms. Vanessa Ugobono, owe him $704,987.00.

70. However, Debtor concealed the fact that when he answered the complaint of his father, soon as he was served, accepting all the allegations of the complaint.

71. Mr. Juan P. Fierres González filed claim number 7-1 of the Claims Register for the amount of $352,493.50. Said claim was drafted by the Debtor and signed by his father.

72. If this totally inexistent claim is allowed, being the second largest of the estate, it will de facto permit that the Debtor sells the real estate property in which Ms. Ugobono and her three small children live and that was awarded as homestead to them by the Superior Court, to pay a fraudulent claim.

73. The claim was accompanied with a partially filled note to the bearer ("pagaré al portador") that was fabricated after Ms.

14

Ugobono moved against him. Said note allegedly was executed on March 9, 2009, when the Debtor still was married with Ms. Ugobono.

74. The documents that were provided in the state court action as evidence of the debt are numerous receipts and invoices dating of years 2002, 2003, and 2005, (at least four years prior to the date of the alleged note) that were paid from the funds of J.F. Distributors Corp. of which Debtor and his wife own 50% of its shares and his father owns the other 50%.

75. Furthermore, the local court already verbally expressed her concerns as to the evidently fabricated nature of the case, as well as the Chapter 13 Trustee of this case.

76. Ms. Vanessa Ugobono filed on May 25, 2011 an objection to this claim since is null and void because: (a) is a fabricated note to created to collect an inexistent debt; (b) the money allegedly loaned came from the corporate funds of J.F. Distributors, Corp. and not from the funds of claimant; and (c) the note was not signed by Ms. Vanessa Ugobono Díaz, who was Debtor's wife under the conjugal partnership regime, at the time it was executed. Ms. Ugobono did not consent to or know of the same.

77. Debtor intended to create a secured claim by accepting as valid a totally avoidable lien. Debtor filed an stipulation with BBVA accepting that an embargo recorded over his residence recorded on September 29, 2011, that is, 28 days prior to the

filing of the petition in the case at bar was a valid lien and agreeing to the relief from stay. Said debt was a commercial loan.

78. The Chapter 13 Trustee and Ms. Vanessa Ugobono objected to said stipulation since it had no cause or consideration in favor of Debtor's estate; was filed in bad faith to affect the rights of creditor Vanessa Ugobono and avoid the homestead order; and validated an avoidable preference under Section 547 the Bankruptcy Code, 11 U.S.C. §547 in prejudice of the unsecured creditors.

79. Debtor and BBVA withdrew said stipulation, after the same was objected.

80. Debtor also lied in his bankruptcy Schedule B when he states that Ms. Vanessa Ugobono's wedding ring and other jewelry is in her possession and at her house located at Urb. Santa María 144 Calle Mimosa. Said jewelry was taken by the Debtor when he abandoned Ms. Ugobono and she has not seen it since.

81. Debtor misrepresents in his Schedule B that he is the owner of an art collection. None of the paintings or sculptures listed on the petition is own by Debtor but belong to Ms. Ugobono's father, who is an art collector and loaned them to her daughter.

## I. FIRST CAUSE OF ACTION

82. The plaintiff incorporates by reference each and every preceding allegation as fully set herein.

83. Plaintiff alleges that pursuant to Section 523(a)(5) of the Bankruptcy Code, 11 U.S.C. 523(a)(5) the Debtor's debt for domestic support obligation that today amounts to $43,316.00, any amount that accrues in the future at the rate of $5,030.00 per month, and any retroactive increase in the domestic support obligation that is imposed by the PR First Instance Court, are not dischargeable.

84. Section 101(14A) of the Bankruptcy Code, 11 U.S.C. §101(14A), states that a domestic support obligation debt includes the amounts that accrue before on or after the date of the order of relief and that is established on, or after, the date of the order of relief.

## II. SECOND CAUSE OF ACTION

85. The plaintiff incorporates by reference each and every preceding allegation as fully set herein.

86. Plaintiff alleges that pursuant to Section 523(a)(5) of the Bankruptcy Code, 11 U.S.C. 523(a)(5) and/or Section 523(a)(15) of the Bankruptcy Code, 11 U.S.C. 523(a)(15), the Debtor's debt for the private school tuition ("matrícula y mensualidades") of his children, that, as of today, amounts to $33,270.54 and any

amount that accrues in the future for said concept, is not dischargeable. Said debt is part of the domestic support obligation and/or its payment was ordered by the PR First Instance Court in accordance with Puerto Rico Laws.

## III. THIRD CAUSE OF ACTION

87. The plaintiff incorporates by reference each and every preceding allegation as fully set herein.

88. Plaintiff alleges that pursuant to Section 523(a)(5) of the Bankruptcy Code, 11 U.S.C. 523(a)(5) and/or Section 523(a)(15) of the Bankruptcy Code, 11 U.S.C. 523(a)(15), the Debtor's debt for the health insurance of his children, that, as of today, amounts to $3,618.00, and any amount that accrues in the future for said concept at the rate of $723.60 per month, is not dischargeable. Said debt is part of the domestic support obligation and/or its payment was ordered by the PR First Instance Court in accordance with Puerto Rico Laws.

## IV. FOURTH CAUSE OF ACTION

89. The plaintiff incorporates by reference each and every preceding allegation as fully set herein.

90. The Superior Court granted plaintiff and her children the residence and the household goods located at Calle Mimosa 144, Urb. Santa María, San Juan, Puerto Rico as homestead.

91. It is argued that said homestead pursuant to Section 523(a)(5) of the Bankruptcy Code, 11 U.S.C. 523(a)(5) and/or

Section 523(a)(15) of the Bankruptcy Code, 11 U.S.C. 523(a)(15), is not dischargeable. The same is part of the domestic support obligation and/or its payment was ordered by the PR First Instance Court in accordance with Puerto Rico Laws.

## IV. FIFTH CAUSE OF ACTION

92. The plaintiff incorporates by reference each and every preceding allegation as fully set herein.

93. It is argued that under Section 727(a)(2) and (4) of the Bankruptcy Code, 11 U.S.C. §727(a)(2) and (4), this Honorable Court shall deny the debtor a discharge since: (a) with the intent to hinder, delay, and defraud Ms. Vanessa Ugobono he has transferred, removed and concealed property within one year before the date of the filing of the petition; (b) he has knowingly, fraudulently and in connection to this case made false statements under oath at the two meetings of creditors held in the case as well as in his Schedules and Statement of Financial Affairs and (c) has drafted and used false claims.

94. A certification of the Department of Defense Manpower Data Center of the United States of America is hereby included as Exhibit A, which states that Debtor is not in active military duty nor in the military service and does not fall within the Service Member Civil Relief Act of 2003.

WHEREFORE, Vanessa Ugobono Díaz respectfully requests from this Honorable Court to enter an order:

a.  Pursuant to Section 523(a)(5) of the Bankruptcy Code, 11 U.S.C. 523(a)(5), denying the discharge of the Debtor's debt for domestic support obligation that today amounts to **$43,316.00**, any amount that accrues in the future at the rate of $5,030.00 per month, and any retroactive increase in the domestic support obligation that is imposed by the PR First Instance Court.

b.  Pursuant to Section 523(a)(5) of the Bankruptcy Code, 11 U.S.C. 523(a)(5) and/or Section 523(a)(15) of the Bankruptcy Code, 11 U.S.C. 523(a)(15), denying the discharge of the Debtor's debt of private school tuition ("matrícula y mensualidades") that as of today amounts to $33,270.54 and any amount that accrues in the future for said concept.

c.  Pursuant to Section 523(a)(5) of the Bankruptcy Code, 11 U.S.C. 523(a)(5) and/or Section 523(a)(15) of the Bankruptcy Code, 11 U.S.C. 523(a)(15), denying the discharge of the Debtor's debt of health insurance that as of today amounts to $3,618.00, and any amount that accrues in the future for said concept at the rate of $723.60 per month;

d.  Pursuant to Section 523(a)(5) of the Bankruptcy Code, 11 U.S.C. 523(a)(5) and/or Section 523(a)(15) of the Bankruptcy Code, 11 U.S.C. 523(a)(15), denying the discharge to Debtor of the right of homestead granted to plaintiff and her children, that includes,

20

the residence and the household goods; and

e. Pursuant to Sections 727(a)(2) and/or 727(a)(4) of the Bankruptcy Code, 11 U.S.C. §§727(a)(2) and/or §727(a)(4), denying the discharge of the debtor.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico this 21st day of May, 2011.

**CORTES LAW OFFICES, PSC**
Attorneys for Vanessa Ugobono Díaz
PO Box 1486
Trujillo Alto, Puerto Rico 00977-1486
Tel.: 787-283-1839
Fax: 787-283-1839

/s/ **EVA MARGARITA CORTES VÁZQUEZ**
**US-DC # 208009**



Military Status Report
Pursuant to the Service Members Civil Relief Act

| ◀ Last Name | First/Middle | Begin Date | Active Duty Status | Active Duty End Date | Service Agency |
|---|---|---|---|---|---|
| JUAN | FIERRES P | Based on the information you have furnished, the DMDC does not possess any information indicating the individual status. | | | |

Upon searching the information data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the current status of the individual as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).

*Mary M. Snavely-Dixon*

_____

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
1600 Wilson Blvd., Suite 400
Arlington, VA 22209-2593

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Service Members Civil Relief Act (50 USC App. §§ 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual is on active duty, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person is on active duty and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. §521(c).

If you obtain additional information about the person (e.g., an SSN, improved accuracy of DOB, a middle name), you can submit your request again at this Web site and we will provide a new certificate for that query.

This response reflects **active duty status** including date the individual was last on active duty, if it was within the preceding 367 days. For historical information, please contact the Service SCRA points-of-contact.

### More information on "Active Duty Status"
Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d)(1) for a period of more than 30 consecutive days. In the case of a member of the National Guard, includes service under a call to active service authorized by the President or the Secretary of Defense for a period of more than 30 consecutive days under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy TARs, Marine Corps ARs and Coast Guard RPAs. Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps) for a period of more than 30 consecutive days.

*Coverage Under the SCRA is Broader in Some Cases*
Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of SCRA extend beyond the last dates of active duty.

Those who would rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected.

WARNING: This certificate was provided based on a name and SSN provided by the requester. Providing an erroneous name or SSN will cause an erroneous certificate to be provided.
Report ID:A2UCL9UGTA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

**JUAN P. FIERRES SANTIAGO,**

    Debtor.

**VANESSA UGOBONO DÍAZ,**
    Movant,

       vs.

**JUAN P. FIERRES SANTIAGO,** Debtor
and **ALEJANDRO OLIVERAS RIVERA** as
Chapter 13 Trustee
    Respondents.

**CASE NO.:10-10065 (ESL)**

**CHAPTER 13**

**MODIFICATION OF THE
AUTMOMATIC STAY FOR
CAUSE**

SWORN STATEMENT UNDER PENALTY OF PERJURY

    To the best of our information and belief the debtor is not
currently serving on active duty in the Armed Forces of the United
States (Army, Navy, Air Force, Marine Corps and Coast Guard) nor
in the National Guard, Air National Guard, the commissioned corps
of the National Oceanic and Atmospheric Administration nor in the
commissioned corps of the Public Health Service (hereinafter
referred as "military corps").

    As per the certification issued by the Department of Defense
Manpower Data Center (which is attached) the debtor is not in
active duty in any of the military corps mentioned.

    I declare under penalty of perjury as permitted under section
1746 of title 28, United States Code that the foregoing is true
and correct.

    Executed in San Juan, Puerto Rico this 3rd of January, 2011.

                        _____
                        VANESSA UGOBONO DÍAZ